FLORENCE H. RICHMOND *vs.* JOHN K. SWEENEY.

Middlesex.     April 5, 1932. — May 19, 1932.

Present: RUGG, C.J., CROSBY, WAIT, SANDERSON, & DONAHUE, JJ.

*Contract*, What constitutes.

At the trial of an action of contract for breach of an agreement by the defendant to purchase certain real estate of the plaintiff, there was evidence that the defendant delivered to a broker employed by the plaintiff his check for $200 and an offer in writing to buy the real estate on a certain date for $27,000, of which $17,000 should be paid in cash and $10,000 by a first mortgage, stating that, if the offer was accepted, he agreed "to sign your usual real estate agreement to carry this out . . . and to make an additional deposit of $4,200, the deposits to be applied to purchase price"; that, several days later the plaintiff's broker prepared and the plaintiff signed a full and formal real estate agreement of purchase and sale of the property which required a payment by the defendant as a deposit of $5,000 and provided that the plaintiff had the privilege of remaining in possession for a short time after the date named for the passing of papers; and that the agreement signed by the plaintiff was delivered to an agent of the defendant, but was not signed by the defendant. *Held*, that

(1) There was no evidence that the offer made by the defendant was accepted by the plaintiff; the agreement signed by the plaintiff was not an acceptance of the defendant's offer in terms, but was the equivalent of a counter proposition, which the defendant did not accept;

(2) The evidence did not warrant a finding that a contract was made between the parties;

(3) The plaintiff could not recover.

CONTRACT.   Writ dated April 4, 1930.

In the Superior Court, the action was tried before *Fosdick*, J.  Material evidence is stated in the opinion.  At the close of the plaintiff's evidence, the defendant rested and moved that a verdict be ordered in his favor.  The motion was denied.  There was a verdict for the plaintiff in the sum of $7,519.16.  The defendant alleged exceptions.

*J. W. Lowrance*, (*W. R. Goodland* with him,) for the defendant.

*A. W. Wunderly*, for the plaintiff.

DONAHUE, J.   This is an action of contract.   The declaration alleges that on or about February 23, 1929, the defendant made an offer in writing to purchase the real estate of the plaintiff situated at 100 Gray Street, Arlington, for the sum of $27,000; that the plaintiff in writing accepted the defendant's offer on or about February 25, 1929; that the defendant repudiated his agreement on March 25, 1929; and that by the failure of the defendant to perform his agreement the plaintiff suffered damage.

On Sunday, February 24, 1929, one Wilton, a real estate broker employed by Walter Channing, Inc., with which company the plaintiff had listed her property for sale, brought the defendant to the plaintiff's home and introduced him to the plaintiff and her husband.   The defendant inspected the premises and talked with the plaintiff about the price and about the date on which possession could be given if the sale should be effected.   Later, on the same day, after leaving the house of the plaintiff, the defendant signed and delivered to Wilton his check for $200 and the following paper: "WALTER CHANNING 50 Congress Street, Boston, Mass.   Feb 23 1929   I make you this firm offer for the property known as Richmond House in the town of Arlington on Gray Street, numbered 100 comprising 26,879 sq. ft. land more or less, with the buildings thereon, of $27,000 to be paid as follows: $17,000 cash, $10,000 first mortgage, at 6%.   I hand you $200 to bind this offer, to be returned to me if it is not accepted before Mar 1 1929.   If it is accepted, I agree to sign your usual real estate agreement to carry this out.   August 30 1929 days, and to make an additional deposit of $4200, the deposits to be applied to purchase price.   Signed with seals attached.   JOHN K. SWEENEY (seal)."   Still later, on the same day, Wilton alone went back to the plaintiff's house with the paper signed by the defendant and showed it and the defendant's check to the plaintiff.   After some discussion with the plaintiff and her husband they agreed to sell.   Wilton then prepared, and the plaintiff and her husband signed, the following paper, which Wilton in his testimony termed an "acceptance blank": "WALTER

CHANNING 50 Congress Street, Boston, Mass. Feb. 23 1929. I agree with you that if this offer is accepted on or before March 1 1929, I will sell my property known as Richmond House in the town of Arlington on Gray Street, numbered 100 comprising 26,879 sq. ft. land, more or less, for $27,000 to be paid as follows: $17,000 cash, $10,000 first mortgage,     years at 6%. On acceptance, I will sign your usual real estate agreement to carry this out August 30, 1929. Your agreement is to use your best efforts to close the matter on this offer. Sellers to have privilege of remaining in possession of property until Sept. 1, 1929. FLORENCE H. RICHMOND (Seal) HAROLD B. RICHMOND (Seal)." There was no evidence that the defendant was informed of the signing of this paper or that its contents were communicated to him.

On Tuesday night, February 26, Wilton presented to the plaintiff a draft of a full and formal real estate agreement of purchase and sale, dated February 25, which he had prepared. This provided that the plaintiff agreed to sell and the defendant to buy the plaintiff's real estate, and set forth the terms and conditions of the sale and the obligations of the parties. The date set for passing papers was August 30, 1929. Among other things the agreement recited a deposit payment by the defendant of $5,000, and provided that the sellers had the privilege of remaining in possession until September 1, 1929. The agreement was then signed by the plaintiff and her husband. She testified that at that time she accepted the offer of the defendant. The defendant was not present and never signed the agreement. Wilton testified that later (the time not appearing in the record) he communicated with Mr. Phillips, the defendant's attorney, following directions given him by the defendant, and gave to Mr. Phillips, or, according to his best recollection, left with the girl at Mr. Phillips' office, a copy of the agreement signed by the plaintiff. Mr. Phillips testified that he never saw the agreement until the time of the trial. On March 25, 1929, Mr. Phillips, in writing, notified the broker that the de-

fendant had withdrawn from participation in the transaction and requested a refund of the deposit made.

The jury returned a verdict for the plaintiff. The case is before us on the defendant's exceptions to portions of the judge's charge, to the admission of certain evidence, and to the refusal of the judge to allow the defendant's motion for a directed verdict.

The defendant's exception to the denial of his motion for a directed verdict presents the question whether the paper, dated February 23, 1929, and signed by him on Sunday, February 24, and the formal real estate agreement, dated February 25, and signed by the plaintiff and her husband on Tuesday, February 26, and later left at the office of the defendant's attorney, were respectively an offer and an acceptance of that offer which resulted in a contract between the parties coming into existence. That is the contention made in the plaintiff's declaration and here asserted by her.

The only occasion the parties met was on Sunday, February 24. The only discussion by them at that time of the terms of a sale, so far as the record shows, was "some talk about the price, also about the date on which possession could be given by the plaintiff to the defendant in case the sale should be effected." Neither then nor at any time, unless the paper signed by the defendant on February 24 and the formal real estate agreement signed by the plaintiff on February 26 constitute an offer and an acceptance, was there any agreement between the parties as to a single term, condition or obligation involved in a contract of sale. It is clear that when the plaintiff testified that she accepted the defendant's offer on Tuesday night, February 26, she meant that her signing of the formal real estate agreement then presented to her by Wilton was an acceptance. If a contract was made it must be found that the paper signed by the defendant on February 24 was an offer of which the formal real estate agreement signed by the plaintiff on February 26 was the acceptance. The evidence did not warrant such a finding by the jury.

The defendant in the paper signed by him on February 24 agreed, if his offer was accepted, to sign the "usual real estate agreement" of the broker "to carry this out." Although there is no evidence warranting the finding that the defendant knew anything about the contents of such "usual real estate agreement," he might be found to have offered to accept as part of the contract he was proposing to make with the plaintiff the terms contained in the "usual real estate agreement" of the broker, whatever those terms were. The real estate agreement signed by the plaintiff was in evidence as an exhibit. Wilton testified that it was "pro forma, the usual real estate agreement used by" the broker employing him. The jury had the opportunity to examine that paper and might have been able to determine precisely from its inspection what portions of it were such as were contained in "the usual real estate agreement" of the broker, and what portions were written in or otherwise added to meet the requirements of the particular transaction. We have not had the opportunity for such inspection. But it is perfectly plain from a perusal of the agreement signed by the plaintiff, as it appears in the record, that many portions of it could not have been printed in the form which the broker was accustomed to use in such real estate transactions but were "filled in," to use Wilton's expression. Among such instances are the provision that the defendant's deposit should be $5,000 and the provision that the sellers should have the privilege of remaining in possession of the premises after the date of passing papers. The statement in the offer of the defendant that if it were accepted he agreed to sign the broker's "usual real estate agreement" was not an offer to be bound by provisions which are applicable only to the particular transaction inserted in the usual form of real estate agreement used by the broker.

The plaintiff might have accepted the offer of the defendant in the form in which it was presented to her notwithstanding its bareness as to matters on which parties to such transactions ordinarily seek to have a definite agreement and notwithstanding its ambiguity as to the

important matter of the date of passing papers. She did not see fit to do this, and it is not necessary to decide whether, if she had, the agreement would have been enforceable. Her response was not in terms of acceptance of the offer made, but was the delivery of a formal real estate agreement signed by herself and her husband. This contained a provision, which was not in the defendant's offer, giving her the right to occupy the premises after the passing of the papers. As to this matter there had been discussion between the parties but apparently no agreement. It also required a deposit of $5,000, whereas the defendant had proposed a total deposit of $4,400. As to this, so far as the record shows, there had never been either discussion or agreement between the parties. The offer of the defendant was not accepted in terms. The response of the plaintiff varied substantially from the offer. It was the equivalent of a counter proposition from the plaintiff which was never accepted by the defendant, and no binding contract was made. "It is an elementary principle in the law of contracts that in order to constitute a valid agreement the acceptance must be in accordance with the terms of the offer." *Lawrence* v. *Rosenberg*, 238 Mass. 138, 141. *Moss* v. *Old Colony Trust Co.* 246 Mass. 139, 148. Since the evidence did not warrant the jury in finding that the parties made a contract, the defendant's exception to the refusal of the judge to direct a verdict for the defendant is sustained, it is not necessary to consider the defendant's other exceptions, and judgment must be entered for the defendant. G. L. c. 231, § 124.

*So ordered.*